Raymond Bernard HUTCHISON,

v.

BROOKSHIRE BROTHERS, LTD., The City of Dayton, Texas, Craig McGowen, Thaketcha Hill and Dennis Shelton.

Case No. 1:01–CV–539.

United States District Court,
E.D. Texas,
Beaumont Division.

May 23, 2002.

Grantham Harlan Coleman, Houston, TX, for plaintiff.

William S. Helfand, Norman Ray Giles, Magenheim, Bateman & Helfand, Houston, TX, for City of Dayton, Craig McGowen, Defendants.

David L. Allen, Joseph Martin McElroy, Zeleskey, Cornelius, Hallmark, Roper & Hicks, Lufkin, TX, for Thaketcha Hill, Dennis Shelton, Brookshire Brothers, Ltd., defendants.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT*

SCHELL, District Judge.

This matter is before the court on issues relating to a suit filed by plaintiff, Raymond Bernard Hutchison, on August 3, 2001 against Brookshire Brothers, Ltd., Dennis Shelton, Thaketcha Hill, the City of Dayton, Texas, the Dayton Police Department, Officer Craig "McGowen," and Conoco Incorporated, alleging multiple causes of action. On October 2, 2001, defendants City of Dayton and Craig McCown (correct spelling) filed "Defendants's, City of Dayton and Craig McCown, Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for a More Definite Statement." (Dkt.# 9). On October 22, 2001, plaintiff filed "Plaintiff's Response to Defendants' City of Dayton, Texas and Craig McCown Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for a More Definite Statement." (Dkt.# 19). On November 20, 2001, this court issued an order granting plaintiff's motion for nonsuit against Conoco, Inc. (Dkt.# 22). On February 2, 2002, plaintiff filed "Plaintiff's First Amended Original Complaint" (Dkt.# 29) against Brookshire Brothers, Ltd., Dennis Shelton, Thaketcha Hill, the City of Dayton, Texas, the Dayton Police Department, and officer Richard Craig McCown. On February 19, 2002, defendants City of Dayton, Texas, Dayton Police Department, and McCown ("defendants") filed "Defendants City of Dayton, Dayton Police Department and Craig McCown's Motion to Dismiss, or in the Alternative Motion for a More Definite Statement." (Dkt.# 31) On March 8, 2002, plaintiff filed "Plaintiff's Response to Defendants City of Dayton, Texas, Dayton Police Department and Richard Craig McCown's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement." (Dkt.# 33)

## I. BACKGROUND

This action stems from events that took place on or about August 3, 1999. Plaintiff stopped at a Conoco Gas Station managed by Brookshire Brothers located in the City of Dayton, Texas. Plaintiff prepaid for $8.00 worth of gas and then allegedly asked Theketcha Hill, an employee of Brookshire Brothers, to set the pump to shut off after $8.00 was pumped. It is undisputed that plaintiff pumped more than $8.00 worth of gas. According to plaintiff, he manually set the pump handle to pump gas automatically and then attended to his vehicle. When plaintiff noticed the pump had not been turned off at $8.00, he shut off the pump and then asked Hill why she did not shut off the pump at $8.00 as he requested. According to plain-

tiff, Hill indicated indifference, but insisted that plaintiff pay the additional $10.63 that was pumped. Plaintiff stated that he did not have the additional money, and Hill directed plaintiff to take the matter up with her manager.

It is undisputed that Dennis Shelton, manager of the Brookshire Brothers, reiterated Hill's position that plaintiff had to pay for the extra gas pumped. According to plaintiff, he then offered to leave his driver's license and several work tools as proof that he would return later and pay the remaining amount. Shelton refused and demanded immediate payment or else plaintiff and his vehicle would not be allowed to leave the premises. When plaintiff suggested Shelton retrieve the excess gas, Shelton refused and instead stated he would supply a water bucket and hose for plaintiff to use to siphon the gas from the vehicle. Plaintiff refused to do so.

At this point, Shelton allegedly called the Dayton Police Department. When police officer Richard Craig McCown arrived, plaintiff and Shelton told him what had happened. McCown allegedly insisted plaintiff be forced to siphon the gas from his vehicle using the hose and bucket supplied by Shelton. According to plaintiff, McCown agreed with Shelton that plaintiff had to suck and siphon at least $10.63 worth of gasoline from his vehicle or else "come go with him," as he adjusted his hand on his gun holster. Plaintiff's First Amended Original Complaint, ¶ 10.

Allegedly knowing that such an activity was dangerous to his health, but fearing jail or loss of life from McCown, plaintiff began to siphon the gas from his vehicle. As plaintiff sucked the gas from the vehicle with minimal success, McCown demanded plaintiff try harder. After a longer hose was brought to plaintiff, he proceeded to suck and siphon ten buckets of gas from his vehicle before he was allowed to stop. During this time, plaintiff says he was forced to inhale the gasoline fumes and swallow gasoline down his throat. In addition, passersby allegedly witnessed plaintiff's humiliation.

The process of siphoning the gas from his vehicle allegedly left plaintiff light headed and dizzy. In addition, plaintiff's eyes watered constantly, and his lips, mouth, tongue, and throat felt "as if they were being burned by fire." Plaintiff's First Amended Original Complaint, ¶ 13. Also, "plaintiff's stomach began to burn as if a million needles were being pressed against the inside of his stomach." Plaintiff's First Amended Original Complaint, ¶ 13. Plaintiff complained to Shelton and McCown about these symptoms but was forced to continue siphoning.

After plaintiff was permitted to leave the premises, he could only drive a short distance before he allegedly began to pass out. His symptoms intensified, and he began to vomit uncontrollably. At this point, plaintiff allegedly called a representative for Conoco, Inc., and told him he was going to the hospital. Plaintiff was told Conoco would have to investigate his claims.

Plaintiff allegedly drove himself to Memorial Hospital in Houston, Texas. The hospital called the Poison Control Center in Atlanta, Georgia, to get instructions on plaintiff's condition and treatment. After being treated, plaintiff left the hospital. After one hour, plaintiff allegedly "began to vomit repeatedly, suffered severe abdominal pain, hot and cold flashes, mouth dryness and intense burning sensation from efforts to urinate and belch." Plaintiff's First Amended Original Complaint, ¶ 16. Plaintiff returned to the hospital where he was treated again.

In his First Amended Complaint, plaintiff brings multiple causes of action.

Count I alleges conspiracy to violate civil rights against each of the defendants. Each of the defendants conspired to violate plaintiff's constitutional rights to be free from illegal search and seizure, illegal arrest and detention, illegal abuse, coercion and intimidation, cruel and unusual punishment, and violation of civil rights under "Section 1983 of the United States Constitution." Plaintiff's First Amended Original Complaint, ¶ 18. Additionally, plaintiff alleges Shelton and McCown conspired to deprive plaintiff of his Fourteenth Amendment substantive due process rights. Plaintiff alleges Shelton was responsible for initiating the incident, and McCown under color of law added to the incident by "creating/heightening what became a clear and present danger." Plaintiff's First Amended Original Complaint, ¶ 18.

Count II alleges intentional infliction of physical and emotional distress against the defendants, jointly and severally. Plaintiff contends Shelton and McCown, willfully and maliciously, and with reckless disregard for plaintiff's rights and life, caused plaintiff to suffer physical and emotional distress. Plaintiff argues he is thus entitled to exemplary damages.

Count III alleges assault and battery against each defendant individually and severally. Plaintiff alleges he sustained medical bills and other expenses as a proximate result of defendants' use of force causing plaintiff to ingest gasoline. Plaintiff asserts his injuries have caused and will continue to cause great pain and suffering, both mental and physical, for which he is entitled to compensatory and exemplary damages.

Count IV alleges malicious abuse of process, official oppression, false arrest and false imprisonment against defendants. Plaintiff alleges defendants used the criminal process against plaintiff, and under color of law, officially oppressed plaintiff, falsely arrested and falsely imprisoned plaintiff. Plaintiff also alleges McCown engaged in official oppression against plaintiff under color of law.

Count V alleges respondeat superior against Brookshire Brothers as the employer of Shelton, and the City of Dayton and the Dayton Police Department as the employer of McCown. Plaintiff sues each defendant for actual and compensatory damages of not less than $5,000,000. In addition, plaintiff sues "for judgment against the individual defendants, Brookshire Brothers Super Market, Ltd., for exemplary damages not less than $50,000,000." Plaintiff's First Amended Original Complaint, ¶ 34.

## II. MOTION TO DISMISS STANDARD

Rule 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." On motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990). In a 12(b)(6) motion, the court cannot consider material outside the complaint. *See Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996) (considering documents either attached to or incorporated in the complaint as part of the complaint for 12(b)(6) purposes). The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Ship-*

*yards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The well-pleaded facts must be reviewed in the light most favorable to the plaintiff. *See Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). Where a complaint shows on its face that it is barred by an affirmative defense, a court may dismiss the action for failing to state a claim. *Kaiser Aluminum*, 677 F.2d at 1050.

A pleading, however, "need not specify in exact detail every possible theory of recovery—it must only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Thrift v. Estate of Hubbard*, 44 F.3d 348, 356 (5th Cir.1995) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Kaiser Aluminum*, 677 F.2d at 1050. " 'The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Kaiser Aluminum*, 677 F.2d at 1050.

"[Rule 12(b)(6) ] must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (Supp.2001); *see also Thrift*, 44 F.3d at 356 n. 13. "[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th cir.1985). "Rule 8 fosters that policy by sweeping aside the hypertechnical pleading that once defeated many an unwary but meritorious claimant." *Id.* "A plaintiff's complaint ordinarily need only be a short and plain statement that gives the defendant notice of what the claim is and the grounds upon which it rests." *Colle v. Brazos County*, 981 F.2d 237, 243 (5th Cir.1993). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995).

## III. ANALYSIS

### A. Motion for a More Definite Statement

In addition to Rule 12(b)(6) and Rule 8(a), the court may, in its discretion, apply Rule 7(a) to compel plaintiff to reply in detail to the affirmative defense of qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427. In *Schultea*, the Fifth Circuit stated, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1433. The discretion of the trial court to require heightened pleading of the plaintiff has been echoed by the Supreme Court. "When a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects

the substance of the qualified immunity defense." *Crawford–El v. Britton,* 523 U.S. 574, 597, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The Court discussed two primary options of the trial court in exercising its discretion, Rule 7(a) and Rule 12(e). *See Crawford–El,* 523 U.S. at 598, 118 S.Ct. 1584. In this case, defendants City of Dayton, Dayton Police Department, and McCown have moved in the alternative for the court to require plaintiff "to allege his asserted causes of action with particularity." Defendants City of Dayton, Dayton Police Department and Craig McCown's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, ¶ 6. Although defendants have not pleaded qualified immunity as an affirmative defense in their answer (they have not filed an answer), defendants have raised qualified immunity as a defense to this lawsuit in each of their Motions to Dismiss. After each Motion to Dismiss, plaintiff has filed a reply, discussing defendants' qualified immunity defense in detail. Thus the court has no need to exercise its discretion under Rule 7(a) to require a reply by plaintiff. The substance of the qualified immunity defense has been protected by plaintiff's engagement of the defense in each of his replies. Therefore, it is not necessary for the court to exercise its discretion to require a more definite statement from plaintiff under Rule 12(e) except that the court hereby orders the plaintiff to file a Second Amended Complaint within 20 days of the "filed" date of this order stating which particular defendants are named in each count. Defendant's Motion For a More Definite Statement is hereby GRANTED in PART.

## B. Capacity of the Dayton Police Department to be Sued

■ Defendants argue that the Dayton Police Department lacks the capacity to be sued. Defendants assert that because the City of Dayton has been named as a defendant, naming the Dayton Police Department as well is "redundant and unnecessary." Defendants City of Dayton, Dayton Police Department and Craig McCown's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, ¶ 7. "[C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held...." Fed. R.Civ.P. 17(b). Under Texas law, authority to organize a police force rests with the city itself. *See* Tex. Loc. Gov't Code Ann. § 341.003. The Fifth Circuit has held that under Texas law, a city police department lacked the independent capacity to be sued. *See Darby v. Pasadena Police Department,* 939 F.2d 311, 314 (5th Cir.1991).

In *Darby,* a former city police officer brought suit under Title VII of the Civil Rights Act of 1964 against the Pasadena Police Department, seeking redress for his termination. The district court dismissed the claim, finding plaintiff's complaint, which was filed against the Pasadena Police Department only and not the City of Pasadena, was filed against a nonexistent jural entity. On appeal, the Fifth Circuit stated, "our cases uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Darby,* 939 F.2d at 313. In *Darby,* the city in question, Pasadena, was a home rule municipality. The court of appeals stated, "the Home Rule Charter of the City of Pasadena in turn reserved to the municipality itself the power to sue and to be sued." *Id.* Because the City of Pasadena did not bestow upon its Police Department the capacity to be sued, the Fifth Circuit concluded, "Darby has failed to show that the City of Pasadena ever granted its police department the capacity to engage in sepa-

rate litigation ... [t]he district court therefore did not err by holding that Darby's suit was brought against an entity with no jural existence, and hence, subject to dismissal." *Id.* at 314.

Here, the City of Dayton is a home rule municipality. As with Pasadena, the City of Dayton's Home Rule Charter reserves to the City the power to sue and be sued. *See* Home Rule Charter, City of Dayton, Texas, Art. 2, § 2.01. Plaintiff has failed to show the City of Dayton ever granted its Police Department the capacity to sue or be sued. Therefore, defendants' Motion to Dismiss plaintiff's claims as to the Dayton Police Department is hereby GRANTED.

## C. Plaintiff's Counts

### (1) Count I—Conspiracy to Violate Civil Rights

Plaintiff claims in his First Amended Complaint that "each of the individual Defendants acting in concert, jointly conspired and under color of law deprived Plaintiff of his Constitutional rights to freedom from illegal search and seizure, from illegal arrest and detention, from illegal abuse, coercion and intimidation, from cruel and unusual punishment, and from violation of his civil rights under Section 1983 of the United States Constitution." Plaintiff's First Amended Original Complaint, ¶ 18. Plaintiff also alleges Shelton conspired with McCown to deprive plaintiff of his Fourteenth Amendment substantive due process rights. Defendants assert plaintiff has failed to state an actionable claim of unconstitutional conduct.

Under Texas law, a conspiracy is defined as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.,* 435 S.W.2d 854, 856 (Tex.1968) (quoting *Great Nat'l Life Ins. Co. v. Cha-*

*pa,* 377 S.W.2d 632, 635 (1964); *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (1937)). The elements of a conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Peavy v. WFAA–TV, Inc.,* 221 F.3d 158, 172 (5th Cir.2000) (quoting *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983)). In his First Amended Complaint, plaintiff states that "Defendant Police Officer McCown agreed with Defendant Shelton" concerning Shelton's insistence that plaintiff siphon the gasoline from his vehicle. Plaintiff's First Amended Original Complaint, ¶ 10. The alleged agreement between Shelton and McCown to force plaintiff to siphon the gasoline, and the damages to plaintiff as a result of Shelton and McCowns' actions, are sufficient to state a claim for common law conspiracy.

In order to successfully state a cause of action under 42 U.S.C. § 1983, plaintiff must state the violation of a specific underlying constitutional right. The Supreme Court has stated, "[t]he validity of the claim must then be judged by reference to the specific constitutional standard which governs that right ...." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "To establish a cause of action under § 1983, a plaintiff must plead the deprivation of a right, secured by the Constitution or laws of the United States, by a person acting under the color of state law." *Robertson v. City of Plano, Texas,* 70 F.3d 21, 23 (5th Cir.1995).

### (i) Fourth Amendment

Plaintiff's allegations of illegal search and seizure and illegal arrest and detention fall under the umbrella of rights afforded under the Fourth Amendment.

The Supreme Court has held that "all claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham,* 490 U.S. at 395, 109 S.Ct. 1865. The Court has developed a test for the determination of a seizure. The *Mendenhall* test states, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Here, plaintiff alleges Shelton insisted plaintiff siphon the gas from his vehicle. After plaintiff initially refused, McCown was called to the scene. When Shelton repeated his insistence that plaintiff siphon the gas, this time in the presence of McCown, the officer allegedly agreed, stating "or else come go with [me]" as he adjusted his hand on his gun holster. Plaintiff's First Amended Original Complaint, ¶ 10. Defendants assert that at most plaintiff's allegations constitute admonitions that plaintiff might be arrested if he failed to either pay for the gas or return it before leaving the premises.

In *Mendenhall,* the Court provided examples of possible seizures where a person made no attempt to leave. The Court listed, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870. Here, plaintiff alleges McCown displayed and even placed his hand on his gun holster while at the same time using language that indicated compliance was necessary to prevent plaintiff from having to go with McCown.

■ In *Robertson v. City of Plano, Texas,* plaintiffs claimed their son's rights under the Fourth and Fourteenth Amendments were violated when he was admonished by police officers regarding possible incarceration. The court concluded that no rights were violated by the admonition; it was not a seizure. *See Robertson,* 70 F.3d at 23–24. Defendants point to the *Robertson* case as support for their contention that plaintiff's allegations amount to merely an admonition and thus fail to state a claim under the Fourth Amendment. However, the court in *Robertson* acknowledged that the facts of that particular case included none of the seizure examples listed in *Mendenhall.* The court noted, "the Robertsons do not allege that the officers displayed weapons, or touched their son, or used language that led him to believe he would be compelled to continue the encounter had he attempted to leave." *Robertson,* 70 F.3d at 24. The pleaded facts of this case, read in a light most favorable to the plaintiff, are not analogous to *Robertson.* The allegations in plaintiff's Amended Complaint are sufficient to allege an illegal detention or seizure on the part of McCown. Therefore, because plaintiff has successfully pleaded conspiracy by McCown to violate a civil right, defendants' Motion to Dismiss Count I as to the Fourth Amendment claim is hereby DENIED.

**(ii) Eighth Amendment**

■ Plaintiff's allegations of cruel and unusual punishment necessitate an analysis under the Eighth Amendment. The Supreme Court has stated, "it is not surprising to find that every decision of this Court considering whether a punishment is

'cruel and unusual' within the meaning of the Eighth and Fourteenth Amendments has dealt with a criminal punishment." *Ingraham v. Wright*, 430 U.S. 651, 666, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Fifth Circuit has acknowledged that the constitutional rights of convicted prisoners are analyzed under the Eighth Amendment, while the same constitutional rights of detainees are analyzed under the Fourteenth Amendment. *See Jacobs v. West Feliciana Sheriff's Department*, 228 F.3d 388, 393 (5th Cir.2000). Here, plaintiff fails to allege any facts indicating conviction of a crime relating to the incident in question. Therefore, plaintiff has failed to state a claim for conspiracy to commit cruel and unusual punishment under the Eighth Amendment on the facts as they are plead in the First Amended Complaint, and the defendants' Motion to Dismiss Count I as to the Eighth Amendment claim is hereby GRANTED.

### (iii) Fourteenth Amendment

As a component of plaintiff's Count I, he alleges Shelton and McCown conspired to deprive plaintiff of his substantive due process rights. It is not common, however, for the due process clause of the Fourteenth Amendment to provide a guarantee of safety or security from private acts. The Supreme Court has stated, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Moreover, the language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* Charges of use of excessive force are analyzed under the Fourth Amendment, not the Due Process

Clause of the Fourteenth Amendment. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395, 109 S.Ct. 1865.

A plaintiff may succeed in stating a claim of a violation of substantive due process under the Fourteenth Amendment only under special circumstances. These two special circumstances are "when the state has a special relationship with the person and when the state exposes a person to a danger of its own creation." *McClendon v. City of Columbia*, 258 F.3d 432, 436 (5th Cir.2001). Here, no special relationship exists between plaintiff and McCown. Therefore, for plaintiff to successfully state a claim for conspiracy to deprive him of his Fourteenth Amendment substantive due process rights, plaintiff must state a claim under the state created danger theory. The state created danger theory states, "[w]hen state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody'." *Johnson v. Dallas Independent School District*, 38 F.3d 198, 200 (5th Cir.1994). After discussing the facts of three cases where the state created danger has been applied, the court in *Johnson* concluded, "state actors may be liable if they created the plaintiffs' peril, increased their risk of harm, or acted to render them more vulnerable to danger." *Id.* In addition, in order for state actors to be held liable it must be shown the state actors possessed a culpable mental state. "Thus the environment created by the state actors must be dangerous; they must

know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.* at 201.

Here, plaintiff alleges in his complaint that McCown, under color of law, conspired with Shelton to help create and heighten a situation that posed a clear and present danger to plaintiff. In other words, plaintiff alleges McCown increased plaintiff's risk of harm by his involvement with the incident. Plaintiff claims Shelton first demanded plaintiff siphon the excess gas out of his car and that plaintiff refused. However, when McCown arrived on the scene and allegedly joined Shelton in insisting plaintiff siphon the gas from the vehicle by sucking on a hose, plaintiff capitulated, fearing jail or loss of life. These allegations meet the requirements under the state created danger theory. Plaintiff pleaded that McCown increased plaintiff's risk of harm and created a danger (sucking on gasoline through a hose) that would not have otherwise existed but for McCown's actions. Thus plaintiff has stated a claim against McCown for conspiracy to violate his substantive due process rights, and the defendants' Motion to Dismiss Count I as to the Fourteenth Amendment claim is hereby DENIED.

### (iv) Application of Qualified Immunity to Officer McCown

Defendants argue plaintiff has failed to state a claim against McCown for conspiracy to violate civil rights because of the qualified immunity doctrine. The Supreme Court has stated, "if the defendant does plead the qualified immunity defense, the district court should resolve that threshold question before permitting discovery." *Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Id.*

The qualified immunity doctrine shields public officials acting within the scope of their official duties from civil liability. *See Kipps v. Caillier,* 197 F.3d 765, 768 (5th Cir.1999). In order to defeat defendants' claim of qualified immunity, plaintiff must satisfy a three part test. "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right at all." *Kipps,* 197 F.3d at 768 (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Here, the court has concluded plaintiff has succeeded in stating a claim for violation of his civil rights pursuant to 42 U.S.C. § 1983, by alleging a deprivation of his rights under the Fourth Amendment and the substantive due process clause of the Fourteenth Amendment. Thus plaintiff has satisfied the first part of the three part test.

Second, the court "must determine whether that right was clearly established at the time of the alleged violation." *Kipps,* 197 F.3d at 768 (quoting *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692). Plaintiff's claim for violation of his right to be free from illegal detention and seizure under the Fourth Amendment is certainly a right that was clearly established in August of 1999, when the alleged violation occurred. However, on the plaintiff's substantive due process violation claim under the Fourteenth Amendment, the Fifth Circuit had not adopted a state created danger theory of liability as of August of 1999. That theory of liability was only recognized recently in the case of *McClendon v. City of Columbia,* 258 F.3d 432 (5th Cir.2001). Therefore, any right under this theory was not clearly established when the alleged violation occurred here. As a result, Offi-

cer McCown is entitled to Qualified Immunity on the Fourteenth Amendment claim to the extent he is being sued in his individual capacity. Plaintiff has, therefore, satisfied the second part of the three part test with respect to his Fourth Amendment claim, but not with respect to his Fourteenth Amendment claim against McCown in his individual capacity.

Third, the court "must determine whether the record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Kipps*, 197 F.3d at 768 (quoting *Morris v. Dearborne*, 181 F.3d 657, 665 (5th Cir. 1999); quoting *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999)). When conducting an analysis under Rule 12(b)(6), it is necessary to assume the facts pleaded by plaintiff in his complaint to be true. The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). As stated earlier, plaintiff has succeeded in stating a claim under the Fourth Amendment against McCown. Therefore, plaintiff has satisfied the third part of the three part test for the Fourth Amendment claim. McCown's Motion to Dismiss based on qualified immunity is GRANTED with respect to plaintiff's Fourteenth Amendment claim and DENIED with respect to plaintiff's Fourth Amendment Claim.

### (v) Liability of the Dayton Police Department and the City of Dayton

Plaintiff seeks to hold the City of Dayton and the Dayton Police Department, in addition to McCown, liable for the alleged conspiracy to violate civil rights. Plaintiff states, "the City of Dayton, Texas and the Dayton Police Department through its officers, office holders, directors, policy makers, and administrators established policies and procedures or failed to establish policies and procedures which led to the injuries and damages inflicted on Plaintiff herein." Plaintiff's First Amended Original Complaint, ¶ 6. Plaintiff lists the following policies to support this claim:

(1) Failure to properly instruct and supervise its employees on the standards of probable cause and specifically the standard of probable cause for the crime of theft as described in the Texas Penal Code;

(2) Failure to properly instruct and supervise its employees on the standards of a reasonable search, and detention which prevent the free association of the citizens of Liberty, County, Texas, in a reasonable manner and for a reasonable time to investigate property ownership;

(3) Failure to properly instruct and supervise its employees on the standards of a false imprisonment;

(4) Failure to properly instruct and supervise its employees on the standards of cruel and unusual punishment; and

(5) Failure to properly instruct and supervise its employees on the standards of civil rights violations under Section 1983.

Plaintiff's First Amended Original Complaint, ¶ 6. Plaintiff goes on to allege the City of Dayton and the Dayton Police Department, through its officers and policy makers, ratified the acts of McCown. As previously stated, the Dayton Police Department is not an independent jural entity and is not subject to suit. Thus plaintiff's claims as to the Dayton Police Department have been dismissed. The focus now shifts to the liability of the City of Dayton.

The Fifth Circuit has stated, "municipal liability under section 1983 requires

proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001). Therefore, in order for municipal liability under section 1983 to be established, there must exist a policymaker. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered ... The official must ... be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "[A]ctual or constructive knowledge of a 'custom' must be attributable to the governing body or officials to whom that body has delegated policy-making authority." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir., 1984) (en banc). The Court has stated, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy ..., whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Pembaur,* 475 U.S. at 480 n. 8, 106 S.Ct. 1292 (quoting *Monell v. New York City Department of Social Services,* 436 U.S. at 694, 98 S.Ct. 2018.) Plaintiff states, "the City of Dayton, Texas and the Dayton Police Department through its officers, office holders, directors, policy makers, and administrators established policies and procedures or failed to establish policies and procedures which led to the injuries and damages inflicted on Plaintiff herein." Plaintiff's First Amended Original Complaint, ¶ 6. Therefore, plaintiff has adequately pleaded the first element necessary to establish municipal liability un-

der section 1983. *See Piotrowski,* 237 F.3d, at 578–79.

The second element of proof in a claim of municipal liability under section 1983 is the existence of a municipal policy. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski,* 237 F.3d at 578. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984). Here, plaintiff alleges policies consisting of the failure to properly instruct and supervise employees on the standards of probable cause, reasonable search and detention, false imprisonment, cruel and unusual punishment, and civil rights violations under section 1983. Therefore, plaintiff has adequately pleaded the second element necessary to establish municipal liability under section 1983.

The third element necessary for municipal liability under section 1983 is that the municipal policy or custom was the "moving force" behind the alleged injury. Even if plaintiff had succeeded in stating a municipal policy or custom, he does not allege any causal connection between the policy and plaintiff's injury. The Supreme Court has stated, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Commissioners of Bryan County,*

*Oklahoma v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff states, "[the City of Dayton and the Dayton Police Department], through its officers and policy makers has ratified the acts of Police Officer Richard Craig McCown, ... which led to the injuries and damages inflicted on Plaintiff." Plaintiff's First Amended Original Complaint, ¶ 7. Thus plaintiff has adequately pleaded the third element necessary to establish municipal liability under section 1983. Therefore, defendants' Motion to Dismiss Count I is DENIED as to the City of Dayton.

### (2) Count II—Intentional Infliction of Physical and Emotional Distress

Plaintiff claims in his First Amended Complaint that "[t]he actions of the Defendants, jointly and severally were extreme and outrageous and performed with the intention of causing severe physical and emotional distress to the Plaintiff herein for which each are individually liable." Plaintiff's First Amended Original Complaint, ¶ 20. Plaintiff also alleges Shelton and McCown caused plaintiff to suffer severe physical and emotional distress in a manner malicious and with willful and wanton indifference to and deliberate reckless disregard for human life and the rights of plaintiff. As such, plaintiff asserts he is entitled to exemplary damages.

■ In order to recover damages for intentional infliction of emotional distress, plaintiff must prove "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). Extreme and outrageous conduct has been defined to be conduct "so outrageous in character, and so extreme in de-

gree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993) (quoting Restatement (Second) of Torts, section 46 cmt. d (1965)). In his amended complaint, plaintiff alleges Shelton and McCown acted intentionally with respect to their insistence that plaintiff siphon the gas from his vehicle. By their alleged insistence on the method of siphoning by mouth, plaintiff was allegedly forced to swallow gasoline as well as inhale noxious fumes. Plaintiff makes no mention of the length of time this took place, but he does allege the process continued until he had siphoned ten buckets full of gasoline. Plaintiff has pleaded conduct by the defendants which arguably meets the definition of extreme and outrageous. Plaintiff also contends that defendants' actions caused him severe emotional distress. Plaintiff claims passersby witnessed his humiliation as he sucked gasoline through the hose and that he has spent many sleepless nights since then thinking about the incident. Thus plaintiff has succeeded in stating a claim for intentional infliction of emotional distress. Defendants' Motion to Dismiss Count II is hereby DENIED as to McCown.

■ Plaintiff asserts he is entitled to exemplary damages due to the intentional infliction of emotional distress. Under Texas law, exemplary damages are not permitted against a municipality. *See Tex. Civ. Prac. & Rem.Code,* § 101.024; *see also, City of LaPorte v. Barfield,* 898 S.W.2d 288, 299 (Tex.1995). Therefore, plaintiff's claim for exemplary damages fails as a matter of law against the City of Dayton. Moreover, a municipality enjoys sovereign immunity with respect to any intentional tort under state law. *See Tex. Civ. Prac. & Rem.Code,* § 101.057. Accord-

ingly, defendants' Motion to Dismiss Count II is GRANTED as to the City of Dayton.

### (3) Count III—Assault and Battery

Plaintiff alleges in his Amended Complaint that "use of force by the Defendants to force Plaintiff to ingest a toxic hazardous dangerous liquid into his body by making him suck gas out of a gas tank was without justification and constitutes assault and battery on his person, for which each Defendant is individually and severally liable." Plaintiff's First Amended Original Complaint, ¶ 24. Plaintiff claims he has sustained medical bills and other expenses, as well as injuries, as a proximate result of the assault and battery. In addition, plaintiff asserts his mental and physical pain and suffering entitle him to compensatory and exemplary damages.

■ Under Texas law, "an assault is . . . an offense against the peace and dignity of the state, as well as an invasion of private rights." *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.Civ.App.-Galveston 1950, writ ref'd n.r.e.). Thus, "the definition of assault, whether in a criminal or civil trial, is the same." *Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 264 (Ct.App.-Corpus Christi, 1980). The Texas Penal Code definition of assault is found at § 22.01.

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code, § 22.01. "A person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative." *Bailey v. C.S.,* 12 S.W.3d 159, 162 (Ct.App.-Dallas, 2000). Here, plaintiff alleges McCown and Shelton intentionally forced plaintiff to siphon ten buckets full of gasoline by sucking on a hose, and that this activity resulted in physical pain. Specifically, plaintiff alleges "[h]is eyes watered constantly, and his lips, mouth, tongue, and throat felt as if they were being burned by fire." Plaintiff's First Amended Original Complaint, ¶ 13. In addition, plaintiff's stomach, "began to burn as if a million needles were being pressed against the inside of his stomach." Plaintiff's First Amended Original Complaint, ¶ 13. The facts alleged, if true, constitute bodily injury to plaintiff for which McCown knew or should reasonably have known to be offensive. Plaintiff has succeeded in stating a claim for assault and battery against McCown. Therefore, defendants Motion to Dismiss Count III is DENIED as to McCown.

However, as previously stated, a municipality has sovereign immunity arising out of a claim alleging an intentional tort, including assault and battery. *See Tex. Civ. Prac. & Rem.Code,* § 101.057. Accordingly, defendants' Motion to Dismiss Count III is GRANTED as to the City of Dayton.

### (4) Count IV—Malicious Abuse of Process, Official Oppression, False Arrest and False Imprisonment

Plaintiff claims in his First Amended Complaint, "Defendants used criminal process and under color of law officially oppressed Plaintiff in order to intimidate him and force/coerce him to suck, and ingest a toxic; hazardous, dangerous liquid into his mouth, to namely remove gasoline from a gas tank." Plaintiff's First Amended Orig-

inal Complaint, ¶ 27. Plaintiff also alleges he suffered damages as a proximate result of the abuse of process, false arrest, false imprisonment, and official oppression under color of state law by McCown.

The basic principle behind the tort of abuse of process is as follows, "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682. Abuse of process is comprised of three elements: "(1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act." *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 756 (Ct.App.-Houston (14th Dist.), 2000). Here, plaintiff has failed to allege a legal process by which defendants caused damages to plaintiff through illegal, perverted, or improper use. Nothing in plaintiff's First Amended Complaint indicates the legal process to which plaintiff refers in his abuse of process claim. Where a complaint asserts merely conclusory allegations, these conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). Therefore, defendants' Motion to Dismiss is GRANTED as to plaintiff's abuse of process claim against McCown and the City of Dayton under Count IV.

■ Under Texas law, "official oppression is a criminal offense rather than an intentional tort." *Callis v. Sellars*, 953 F.Supp. 793, 800 (S.D.Tex.1996); *see also Hulett v. City of Dallas*, 2000 WL 1010674 (N.D.Tex.2000). Plaintiff has filed a civil lawsuit against defendants. Therefore, plaintiff has failed to state a claim upon which relief can be granted with regard to official oppression. Defendants' Motion to Dismiss is GRANTED as to plaintiff's official oppression claim against McCown and the City of Dayton under Count IV.

■ Plaintiff asserts a claim of false arrest against defendants for the acts detailed in plaintiff's First Amended Complaint. To maintain a false arrest claim, plaintiff must prove the law enforcement official did not have probable cause to make the arrest in question. *See Villegas v. Griffin Industries*, 975 S.W.2d 745, 753–54 (Ct.App.-Corpus Christi, 1998); *see also, Lang v. City of Nacogdoches*, 942 S.W.2d 752, 764 (Ct.App.-Tyler, 1997). Here, plaintiff does not plead facts to indicate that an arrest occurred at all. Therefore, plaintiff has failed to state a claim for false arrest. Defendant's Motion to Dismiss is GRANTED as to plaintiff's false arrest claim against McCown and the City of Dayton under Count IV.

■ The tort of false imprisonment is comprised of three elements. These are, "(1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Company v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985). In plaintiff's First Amended Complaint, plaintiff alleges McCown forced him to siphon gasoline through a hose and that plaintiff was not permitted to leave until he had siphoned ten buckets full of gasoline. Plaintiff also states, "[h]aving no other option and under duress, fear of jail or worse of his life, from the Police Officer, Plaintiff, who knew that such a practice was dangerous to his health tried to siphon the gasoline from his vehicle." Plaintiff's First Amended Original Complaint, ¶ 11. Plaintiff alleges facts in his complaint that satisfy the first two elements of false imprisonment.

■ Under Texas law, a person may detain another without consent under certain circumstances. "A person who reasonably believes that another has stolen or is attempting to steal property is privileged to detain that person *in a reasonable manner* and for a reasonable time to investigate ownership of the property." *Tex. Civ. Prac. & Rem.Code,* § 124.001 (emphasis added). In this case, this statute may apply to defendants Hill, Shelton, and Brookshire Brothers. As a police officer, defendant McCown may have broader authority to detain someone suspected of theft. However, any detention must be done in a reasonable manner. Here, plaintiff has alleged the manner in which he was detained (being forced to suck gasoline through a hose) was dangerous and resulted in two hospital visits, and that aspect of his detention was allegedly without authority of law. Therefore, Plaintiff has pleaded facts sufficient to meet the third element of false imprisonment. Therefore, defendants' Motion to Dismiss plaintiff's false arrest claim as to McCown under Count IV is DENIED.

### (5) Count V—Respondeat Superior

■ Plaintiff claims in his Amended Complaint, "Defendants Brookshire Brothers Super Market Ltd., as the employer of Dennis Shelton and the City of Dayton and the Dayton Police Department as the employers of Richard Craig McCown are jointly responsible and liable under respondent [sic] superior for the actions of their employees." Plaintiff's First Amended Original Complaint, ¶ 31. Because these motions to dismiss have been filed only by the City of Dayton, the Dayton Police Department, and Officer Craig McCown, the court will focus on the question of liability of the City of Dayton under the doctrine of respondeat superior. The court finds that, with respect to § 1983 claims, this question was addressed some

time ago by the United States Supreme Court. "*Monell* and later decisions reject municipal liability predicated on respondeat superior, because the text of section 1983 will not bear such a reading." *Piotrowski,* 237 F.3d at 578 (citing *Monell v. Dep't of Social Services,* 436 U.S. at 694, 98 S.Ct. 2018.) Plaintiff has, therefore, failed to state a § 1983 claim against the City of Dayton under the doctrine of respondeat superior. The Motion to Dismiss Count V as it relates to the plaintiff's § 1983 claims against the City of Dayton is GRANTED.

Regarding state law claims, the Texas Legislature has by statute, provided for governmental liability based on respondeat superior under certain limited circumstances. Those circumstances involve personal injury arising from the operation of motor-driven equipment by a city employee or injury caused by a condition or use of tangible personal or real property. *See* § 101.021 *Tex. Civ. Prac. & Rem.Code.* Although the limited waiver of sovereign immunity under § 101.021 may apply in this case, as discussed below, certain exceptions to the limited waiver also apply.

### D. Application of Official and Sovereign Immunity

In its Motion to Dismiss, defendants argue McCown and the City of Dayton are both immune from plaintiff's state law claims, and that, therefore, plaintiff's state law claims should be dismissed.

■ "[S]overeign immunity and official immunity are to be distinguished. Official immunity protects individual officials from liability; sovereign immunity protects governmental entities from liability." *DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995). Defendants assert McCown is entitled to official immunity from plaintiff's state law claims. "Govern-

ment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Because official immunity is an affirmative defense, the burden rests on the defendant to establish all the elements of the defense. *See id.* Here, plaintiff alleges that McCown acted "with malice toward Plaintiff, and with willful and wanton indifference to and deliberate reckless disregard for human life and the rights of Plaintiff." Plaintiff's First Amended Original Complaint, ¶ 22. This allegation runs counter to defendant McCown's assertion that he acted in good faith; therefore, the motion to dismiss for failure to state a claim based on the mere assertion of official immunity is DENIED.

Defendants assert the City of Dayton is entitled to governmental (sovereign) immunity from plaintiff's state law claims and that the City has not waived governmental immunity in this case. Waiver of governmental immunity is covered by the Texas Tort Claims Act. In analyzing waiver of governmental immunity, three principles govern. "First, the waiver of governmental immunity is a matter addressed to the Legislature. Second, for the Legislature to waive sovereign immunity, it must do so by clear and unambiguous language. Finally ... we must construe the waiver provisions of the Tort Claims Act to give effect to the object sought to be attained by the statute." *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994) (citations omitted). The relevant provision for waiver of sovereign immunity is Texas Civil Practice & Remedies Code § 101.021, which states,

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

■■■ Defendants assert that plaintiffs have failed to meet their burden to show applicability of § 101.021. "Because Plaintiff does not allege facts that provide for any waiver of the immunity to which the City is entitled, Plaintiff's common law claims against City must be dismissed." Defendants City of Dayton, Dayton Police Department and Craig McCown's Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, ¶ 48. Plaintiff does, however, plead facts which meet the standard for waiver of governmental immunity. "There is no question that subsection 2 provides for governmental liability based on respondeat superior for the misuse by its employees of tangible personal property." *DeWitt,* 904 S.W.2d at 653. Plaintiff pleads personal injury caused in part by McCown's use of his gun holster, which plaintiff felt forced him to begin siphoning the gasoline. "[W]hether the governmental employee is entitled to official immunity may affect whether the Texas Tort Claims Act's limited waiver of sovereign immunity is applicable." *Id.* Section 2 has been interpreted to mean that the government, "were it a private

person, ... would be entitled to assert any affirmative defenses its employee has to liability." *DeWitt*, 904 S.W.2d at 654. The doctrine of respondeat superior "declares the act of the servant to be the act of the master, and that which excuses or justifies the one will in like manner excuse and justify the other." *Cameron Compress Co. v. Kubecka*, 283 S.W. 285, 287 (Tex.Civ.App.-Austin, 1926, writ ref'd). Here, on a motion to dismiss under Rule 12(b)(6), where the court is deciding only whether the facts alleged, if true, would entitle the plaintiff to some legal remedy, McCown is not entitled to official immunity. Therefore § 101.021(2) is applicable, waiving governmental immunity for the City.

Although a statutory condition for waiver of governmental immunity has been met, there are two exceptions to the waiver of governmental immunity that apply to this case. Under Texas Civil Practice and Remedies Code § 101.055(3), an exception to the waiver of governmental immunity is afforded for claims "arising from the failure to provide or the method of providing police ... protection." Here, plaintiff pleads a violation of his Fourteenth Amendment substantive due process rights under the state created danger theory. The state created danger theory states, "[w]hen state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody'." *Johnson*, 38 F.3d at 200. Plaintiff claims that instead of protecting plaintiff or coming to his aid when McCown arrived on the scene, he began demanding plaintiff siphon the gasoline thereby increasing the risk of harm to plaintiff. The exception to the limited waiver of governmental liability found in § 101.055(3) applies in this case based on the facts as plaintiff has plead them. Thus plaintiff cannot bring an actionable claim of state law violations against the City.

Under Texas Civil Practice and Remedies Code § 101.057, an exception to the waiver of governmental immunity exists for intentional torts. Because all of plaintiff's state law claims involve intentional torts, the exception to the limited waiver of governmental immunity found in § 101.057 applies in this case as well. Therefore, due to governmental immunity, plaintiff has failed to state a claim against the City of Dayton for violations of state law. Defendants' Motion to Dismiss plaintiff's state law claims against the City of Dayton is hereby GRANTED.

## IV. CONCLUSION

Therefore, upon consideration of the City of Dayton's, the Dayton Police Department's, and Craig McCown's Motion to Dismiss, the court is of the opinion that this motion should be GRANTED IN PART and DENIED IN PART as set forth above. As a result of this order, the following claims remain in this lawsuit: (1) conspiracy to violate civil rights under the Fourth Amendment against the City of Dayton, McCown, Brookshire Brothers, Shelton, and Hill, and under the Fourteenth Amendment against the City of Dayton, McCown (except in his individual capacity), Brookshire Brothers, Shelton, and Hill, (2) intentional infliction of emotional distress against McCown, Brookshire Brothers, Shelton, and Hill, (3) assault and battery against McCown, Brookshire Brothers, Shelton, and Hill, and finally (4) false imprisonment against McCown, Brookshire Brothers, Shelton, and Hill.

It is so ORDERED.