UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-41229
_____


GLEN ROBERTSON and CHERYL ROBERTSON,
Individually and as Heirs at Law of
Jonathan P. Robertson,

Plaintiffs-Appellants,

versus

PLANO CITY OF TEXAS, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
November 15, 1995

Before REYNALDO G. GARZA, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this challenge to a Rule 12(b)(6) dismissal, primarily at issue is whether police officers violated a juvenile's rights under the Fourth and Fourteenth Amendments when, while investigating a burglary, they admonished him regarding potential imprisonment, even though they knew that the described punishment was applicable only to adults. We **AFFIRM**.

I.

Pursuant to 42 U.S.C. § 1983, the Robertsons sued the City (Plano, Texas), its police chief, and several police officers, asserting, in addition to claims under state law, claims under the Fourth, Ninth, and Fourteenth Amendments to the United States

Constitution.  They alleged that, one late evening in August 1993, two officers came to the Robertsons' home to talk with their 16-year-old son, Jonathan, about a burglarized car; that the officers suspected Jonathan and another juvenile had committed the burglary; that they notified Jonathan that he was a suspect and took his driver's license; that, without first giving *Miranda* warnings, they obtained his confession and admonished him that the offense was a third degree felony that carried the possibility of a $10,000 fine and imprisonment in a state penitentiary; that, although the officers knew that Jonathan was a minor, they quoted the law as it applied to adults; that the officers realized that the admonition was not accurate, but did not so inform Jonathan; and that Jonathan committed suicide at the Robertsons' home the next morning.

Contending, *inter alia*, that the Robertsons failed to state a claim upon which relief could be granted, the defendants moved to dismiss pursuant to FED. R. CIV. PROC. 12(b)(6).  The district court granted the motion in part; all federal claims were dismissed with prejudice, and the state law claims were dismissed with and without prejudice.[1]

## II.

In addition to asserting constitutional claims, the Robertsons contend that they should have been allowed to amend their

---

[1]     The district court dismissed with prejudice the state law negligence claims against the City, based on its sovereign immunity under Texas law; the Robertsons have not challenged this on appeal. The negligence claims against the officers and police chief were dismissed without prejudice.  And, the Robertsons have abandoned their Ninth Amendment claim.

complaint. Because so much of their brief is devoted to presenting their claims based on allegations they contend they will make if allowed to replead, we address the procedural issue first.

A.

Although leave to amend should be granted liberally, we review its denial only for abuse of discretion. *E.g., **Cinel v. Connick***, 15 F.3d 1338, 1346 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 189 (1994). But, as an added wrinkle, this issue is premised on a factual dispute, which is raised for the first time on appeal, thus, bringing plain error review into play.

In their response to the motion to dismiss, the Robertsons stated that, "should the court find that Plaintiffs' pleadings are unclear or deficient ... then Plaintiffs request that they be allowed to replead to correct any deficiencies". Notwithstanding this request, the district court stated, in its dismissal order, that the Robertsons did not wish to replead:

> Although plaintiffs requested the opportunity to replead if the complaint was defective, at the management conference counsel for plaintiffs represented to the Court that plaintiffs were willing to stand on their response and the live pleadings in the determination of the motion to dismiss and did not want to replead.

The Robertsons insist that they did not drop their request to replead; in support, they offer an affidavit, which is not part of the record, from one of their attorneys present at the management conference. But, obviously, if the district court characterized incorrectly, or misunderstood, the Robertsons' position on amending the complaint, they should have requested reconsideration, pursuant

to FED. R. CIV. P. 59(e) or 60(b). This allows the district court to correct any error that it may have committed. *E.g., Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975). For equally obvious reasons, this is especially critical for claimed errors of fact, as in this instance.

The district court found that the Robertsons did not wish to replead, and the Robertsons failed to object to this finding in district court. Because their objection is raised for the first time on appeal, we review only for plain error. *See United States v. Calverly*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (if appellant shows clear or obvious error that affects his substantial rights, appellate court has discretion to correct errors that seriously affect fairness, integrity, or public reputation of judicial proceedings), *cert. denied* __ U.S. __, 115 S. Ct. 1266 (1995); *see also*, *Highlands Ins. v. National Union Fire Ins.*, 27 F.3d 1027 (applying same standard in civil case), *cert. denied* __ U.S. __, 115 S. Ct. 903 (1995).

Moreover, because the nature of the claimed error is a question of fact, the possibility that such a finding could rise to the level of obvious error required to meet part of the standard for plain error is remote. *United States v. Vital*, __ F.3d __, 1995 WL 613322, *3 (5th Cir. 1995) (quoting *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), *cert. denied*, 500 U.S. 94 (1991) for proposition that "questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error"). In sum, we have no basis from which to

conclude that the finding that the Robertsons did not wish to replead could have been erroneous; *afortiori*, it cannot be plain error.

B.

We review a 12(b)(6) dismissal *de novo*. *E.g.,* **Jackson v. City of Beaumont Police Dep't**, 958 F.2d 616, 618 (5th Cir. 1992). It will be affirmed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". **McCormack v. National Collegiate Athletic Ass'n**, 845 F.2d 1338, 1343 (5th Cir. 1988) (internal quotation and citation omitted). We take as true the allegations in the complaint; however, we cannot assume facts not alleged. **Id.**, at 1343.

To establish a cause of action under § 1983, a plaintiff must plead the deprivation of a right, secured by the Constitution or laws of the United States, by a person acting under color of state law. *E.g.,* **Evans v. City of Marlin, Tex.**, 986 F.2d 104, 107 (5th Cir. 1993). The Robertsons claim that their son's rights were violated under the Fourth and Fourteenth Amendments, when the officers admonished him regarding possible imprisonment. For purposes of analyzing the claims, it bears noting that the complaint does not allege that the officers threatened the Robertsons' son, only that he was admonished.[2]

---

[2]     Because, as discussed *infra*, the Robertsons fail to state a violation of the Constitution, we need not address the issues of qualified immunity, or whether the officers' conduct was "deliberately indifferent" or merely "negligent", or whether the City or its police chief can be held liable.

1.

"[T]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...."  U.S. CONST. amend. IV.  "A search occurs when the government infringes `an expectation of privacy that society is prepared to consider reasonable.'  Seizure of a person occurs when the government meaningfully interferes with his liberty...." *National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir. 1987) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)), *aff'd in part, vacated in part*, 489 U.S. 656 (1989).

The Robertsons have failed to identify a right protected by the Fourth Amendment that was violated by the admonition; it was not a seizure.  The Robertsons' son was not placed under arrest, nor is there any allegation that the officers restrained his freedom.  *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("a person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained").

The Robertsons rely on *White v. Walker*, 950 F.2d 972 (5th Cir. 1991), where we reversed a directed verdict premised on qualified immunity.  *White* pertained to the suicide of a 14-year-old boy after a traffic stop and his detention at the police station; thus, it involved a seizure.

In stark contrast, no seizure occurred in the case at hand. Some indicia of a seizure adequate to trigger Fourth Amendment protections are identified in *Mendenhall*, 446 U.S. at 554-55.  The son's encounter with the officers had none of these.  For example,

the Robertsons do not allege that the officers displayed weapons, or touched their son, or used language that led him to believe he would be compelled to continue the encounter had he attempted to leave. *Id.* Contrary to the Robertsons' assumption, "not all personal intercourse between policemen and citizens involves `seizures' of persons". *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

2.

No State shall "deprive any person of life, liberty, or property, without due process of law". U.S. CONST. amend. XIV, § 1. To state a § 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must show that he has "asserted a recognized `liberty or property' interest within the purview of the Fourteenth Amendment, and that [he was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law". *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted), *cert. denied*, 498 U.S. 1040 (1991). At issue is the substantive component of the Due Process Clause; it "protects individual liberty against `certain government[al] actions regardless of the fairness of the procedures used to implement them'". *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). *See Rochin v. California*, 342 U.S. 165, 172 (1952) (state conduct may violate substantive due process if it "shocks the conscience").

It goes without saying that, in determining whether the constitutional line has been crossed, the claimed wrong must be viewed in the context in which it occurred. *McFadden v. Lucas*, 713

F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983). We find neither Fourteenth Amendment case law, nor case law construing other constitutional requirements, that would support holding that the Due Process Clause afforded the Robertsons' son (16 years old) a right to be free from an erroneous admonishment regarding punishment and prison. Nor do we find such conduct to be of the type that is violative of substantive due process.

For example, in the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations". **McFadden**, 713 F.2d at 146 (quoting **Coyle v. Hughs**, 436 F. Supp. 591, 593 (W.D. Okla. 1977)); *accord* **Johnson v. Glick**, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033 (1973); **Collins v. Cundy**, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under § 1983).

Other circuits have determined that language more egregious than the admonishment in issue failed to comprise a constitutional violation. In **Emmons v. McLaughlin**, 874 F.2d 351 (6th Cir. 1989), Emmons alleged that police officers harassed and intimidated him because of their unfounded belief that he was a drug dealer, eventually compelling him to leave town. Specifically, Emmons alleged that an officer approached him in a parking lot and stated, *inter alia,* "I am going to get you...." **Id.** at 353. Rejecting

- 8 -

Emmons' contention that this threat caused him to fear for his life in violation of his constitutional rights, the Sixth Circuit declared that these words were "not an actual infringement of a constitutional right, and thus, ... not actionable under section 1983". *Id.*

Similarly, in **Hopson v. Fredericksen**, 961 F.2d 1374 (8th Cir. 1992), Hopson was placed in the back seat of a police car while being questioned by two officers. Hopson alleged that one of the officers turned to the other, uttered a racial slur, and, then, threatened to "`knock [Hopson's] remaining teeth out of his mouth' if he remained silent". *Id.* at 1378 (alteration in original). The Eighth Circuit noted that the officer never threatened to kill Hopson, never brandished a lethal weapon, and never physically assaulted him. The court reasoned that "[a]lthough such conduct is not to be condoned", it did not rise to the level of a "brutal" and "wanton act of cruelty". *Id.* at 1379.[3]

Nor does Jonathan's status (16-year-old juvenile) create an exception to the general rule. In **Pittsley v. Warish**, 927 F.2d 3 (1st Cir.), *cert. denied*, 502 U.S. 879 (1991), two police officers arrived at Pittsley's home and inquired of her two children whether their father was at home. When the four-year-old and ten-year-old children responded negatively, the officers allegedly told them:

---

[3]    By contrast, *see* **Burton v. Livingston**, 791 F.2d 97, 99-100 (8th Cir. 1986) (actionable claim stated when prison guard pointed pistol at prisoner, cocked trigger, and stated "nigger run so I can blow your Goddamn brains out, I want you to run so I'll be justified"; "prisoner retains ... the right to be free from the terror of instant and unexpected death at the whim of his allegedly bigoted custodians").

"if we see your father ... on the streets again, you'll never see him again".  *Id.* at 5.  Pittsley alleged that, when the father was arrested later at her home, based on a valid arrest warrant, the arresting officer treated her children "very badly" (although "he did not put his hands on them") and used "vulgar language" in refusing to allow the children to hug or kiss their father goodbye.  *Id.*  Contending that, in light of the vulnerability of young children, the arresting officer's actions and language was "so brutal, offensive and intimidating as to `shock the conscience'", Pittsley and her children claimed a due process violation.  *Id.* at 7.  The court disagreed: "The children's alleged fear or trauma which resulted from these spoken words and actions in this instance ... [was] not sufficient to rise to the level of a constitutional violation under the standard enunciated in *Rochin*".  *Id.*[4]

---

[4]     The Robertsons rely on *Wilkinson v. Ellis*, 484 F. Supp. 1072 (E.D. Pa. 1980).  There, the police threatened a potential witness with loss of the custody of her infant son if she refused to sign a statement implicating her husband in a crime.  She alleged that the police forced her "to choose between her husband and her son".  *Id.* at 1090.  Based upon the "unique circumstances of [the] case", the district court rejected a motion to dismiss, concluding that the threat "constitute[d] an intrusion into Mrs. Wilkinson's right of family integrity sufficient to state a cause of action under 42 U.S.C. § 1983".  *Id.* at 1089.  The court described the incident as "a colossal intimidation delivered in the midst of a high drama".  *Id*. at 1090.

The factual distinctions between this case and *Wilkinson* are substantial.  Jonathan was the focus of a criminal investigation, unlike the mother in *Wilkinson*.  In short, the factual differences are too great for *Wilkinson* to assist us.

## III.

For the foregoing reasons, the judgment is

**AFFIRMED**.