**Wanda ROBERSON, Plaintiff,**

v.

**GAME STOP, INC., Defendant.**

No. CIV. 3:03–CV–2816–H.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 20, 2005.

Order Granting Reconsideration
in Part Feb. 8, 2005.

Eliot D. Shavin, SMU School of Law, Dallas, TX, for Plaintiff.

Ashley Scheer, W. Gary Fowler, Jackson Walker, Dallas, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Defendant's Motion for Summary Judgment, filed November 15, 2004; Plaintiff's Response, filed December 6, 2004; and Defendant's Reply, filed December 16, 2004.[1] Also before the Court are Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, filed December 16, 2004; and Plaintiff's Response, filed December 30, 2004. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

Plaintiff was hired by Defendant on August 10, 1999, to work in the Return to Vendor (RTV) department. (2d Am. Compl. at 2.) Plaintiff was promoted to Lead of the RTV department on February 1, 2001. (Pl.'s App. at 106.) On November 11, 2002, Plaintiff took a leave of absence under the Family and Medical Leave Act ("FMLA"). She returned to work on December 9, 2002.

Plaintiff alleges that upon her return, she was demoted from the position of RTV Lead and that she was replaced by a white employee Stephanie McKee. (Pl.'s App. at 158–60.) McKee had served as Plaintiff's "backup" Lead, or "Co–Lead," prior to Plaintiff's leave of absence. (*Id.* at 158.) Plaintiff alleges she was demoted on December 13, 2002, because McKee possessed WMS computer training-training which Plaintiff sought but never adequately received. (*Id.* at 160, 156, 157.) Plaintiff also states that on January 8, 2003, McKee and Plaintiff were informed that they "were both going to be demoted to clerks with a cut in pay." (*Id.* at 163.) Plaintiff continued working for Defendant until Plaintiff broke her foot and could not return to work. (*Id.*) Plaintiff received a medical release from work and has not since been cleared to return to work. (*Id.* at 24.) Plaintiff's initial worker's compensation claim was denied, but was later approved. (*Id.* at 164.) Plaintiff filed complaints with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission. (*Id.* at 164–65.) Upon the conclusion of Plaintiff's provided leave under the FMLA, Defendant terminated Plaintiff's employment, stating the expiration of such leave as the cause of her termination. (*Id.* at 165.) Plaintiff argues that Defendant's stated reason for terminating Plaintiff is mere pretext for discrimination and/or retaliation.

Plaintiff filed the instant case alleging discrimination and retaliation in violation

---

1. Although Defendant's Motion for Summary Judgment was filed against Plaintiff's First Amended Complaint, because the Court finds that the Second Amended Complaint only affects the extent of punitive damages to which Defendant might be liable, the Court considers the motions in light of Plaintiff's Second Amended Complaint, filed December 20, 2004.

of (1) Title VII, 42 U.S.C. § 2000e; (2) 42 U.S.C. § 1981; (3) the Texas Worker's Compensation Act; and (4) the FMLA. Defendant now moves for summary judgment as to all of Plaintiff's claims.

## II. STANDARD

■ Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits, and other summary judgment evidence illustrate that no reasonable trier of fact could find for the non-moving party as to any material fact. FED.R.CIV.P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Innovative Database Systems v. Morales*, 990 F.2d 217 (5th Cir.1993). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir.1998) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

■ If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir.1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir.1995).

■ In determining whether genuine issues of fact exist, "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir.2001); *see also Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, in the absence of any proof, the Court will not assume that the non-moving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991).

## III. ANALYSIS

Plaintiff's Second Amended Complaint includes the following claims: racial discrimination in violation of Title VII and 42 U.S.C. § 1981; violations of the Family and Medical Leave Act; and retaliation in violation of Title VII and the Texas Worker's Compensation Act. Each claim shall be addressed in turn.

### A. Race Discrimination

#### 1. Title VII

■ Plaintiff alleges racial discrimination in violation of Title VII because De-

fendant failed to train Plaintiff in the same manner that Defendant trained a subordinate white employee. (Pl.'s Br. at 6.) Plaintiff's Response establishes that Plaintiff repeatedly requested training beginning in the Spring of 2001 and continuing through December 2002, the approximate time when Stephanie McKee, Plaintiff's "backup" Lead and a white employee, was given the training. (Pl.'s Resp. at 5–6; Pl.'s App. at 30A.) Plaintiff properly raised her claim for a failure to train within 180 days of the time when she knew that McKee was given the training Plaintiff was allegedly denied. *See Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir.2001). Although a failure to train may rise to the level of an adverse employment action establishing discrimination under Title VII, this does not occur where the alleged failure to train an employee is one of a matter of adequacy and where no formal program of training exists. *See Neal v. Wolf Camera & Video,* No. CA 3:97–CV–3007–R, 1999 WL 172319, at *5–6 (N.D.Tex. Mar. 22, 1999) (Buchmeyer, C.J.). It is undisputed that no formal training program existed at Gamestop. (Pl.'s App. at 157.) Plaintiff "provides no significant evidence that a denial of such training would 'tend to affect' her employment status or benefits." *See Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406–07 (5th Cir.1999). Therefore, Plaintiff has not sufficiently demonstrated an adverse employment action in her failure to train claim and fails to establish a *prima facie* case of racial discrimination. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII failure to train claims.

### 2. *42 U.S.C. § 1981*

■ Plaintiff claims that Defendant's failure to provide training denied Plaintiff the opportunity to make and enforce contracts on equal footing with white citizens.

(*See* 2d Am. Compl. at 7.) Plaintiff, however, points to no right to training established by contract or necessity for promotion. Instead, Plaintiff acknowledges that Defendant provided training only informally. (Pl.'s App. at 42, 157.) Plaintiff does not provide summary judgment evidence indicating that she had a right to training as part of her employment. As a result of the above, Plaintiff has failed to establish a violation of 42 U.S.C. § 1981 for her failure to train claim. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 claim is **GRANTED**.

### B. Family and Medical Leave Act (FMLA)

Plaintiff claims multiple violations of the FMLA. First, Plaintiff claims Defendant failed to restore Plaintiff "to the position she held when her Family Medical Leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions in employment." (2d Am. Compl. at 7.) Second, Plaintiff claims Defendant failed to provide her with the training necessary to remain qualified for her job following her return from Family Medical Leave. Plaintiff alleges two instances when she utilized her Family Medical Leave: once while taking care of her wounded son between November 11, 2002, and December 9, 2002 (*id.* at 3); and once upon her injury beginning on April 14, 2003. (*Id.* at 5–6.)

■ Following Plaintiff's injury in 2003, Plaintiff has been unable to return to work. (*See* Pl.'s App. at 164.) It is well established that an employer may terminate an employee unable to return to work after the exhaustion of the twelve week period of Family Medical Leave where the employer has a legitimate, nondiscriminatory reason for terminating the employee.

29 U.S.C. § 2612(a)(1)(D) (2004); *Gray v. Sears, Roebuck & Co., Inc.*, 131 F.Supp.2d 895, 900–01 (S.D.Tex.2001); *Karnes v. Central Tex. Mental Health Retardation Ctr.*, No. Civ. A. 6:01–CV–045–C, 2002 WL 31257714, at *5 (N.D.Tex. Feb. 22, 2002) (Cummings, J.). This is true whether an organization has an official policy of terminating employees upon the expiration of their Family Medical Leave or not. An employee's right to reinstatement after expiration of Family Medical Leave is not guaranteed upon a revelation that an employer has deviated from its written policy on a single prior occasion.[2] (*See* Pl.'s Resp. at 8.) Defendant terminated employee because she was unable to return to work upon the exhaustion of her leave and offered Plaintiff the opportunity to reapply for a position with the organization once she had received a medical release to work. (Pl.'s App. at 117.) The inability to return to work upon the exhaustion of the twelve week period of Family Medical Leave is a legitimate, nondiscriminatory reason for terminating an employee. *See Karnes*, 2002 WL 31257714, at *5; *Gray*, 131 F.Supp.2d at 901. Plaintiff has not provided any summary judgment evidence that she applied for a position and was denied or that Defendant did not provide "every effort" to place Plaintiff. Therefore, Plaintiff's FMLA claim based on the failure to reinstate her after her 2003 injury is not ripe for review and Plaintiff's claim based on a failure to train is inapplicable to the period following her 2003 injury.

▆▆▆▆ Although inartfully pled, Plaintiff's failure to restore claim might also be applied to the period of time after Plaintiff took Family Medical Leave in 2002 to care for her son. This claim, however, fails for lack of standing. Although there exists a fact issue as to whether Plaintiff was restored to her original position, the FMLA only provides a remedy insofar as it awards lost compensation, benefits, and other tangible benefits. 29 U.S.C. § 2617. Because it is undisputed that Plaintiff suffered no reduced salary, benefits, or other tangible benefit upon her return as a result of her leave and incurred no cost of providing care during her leave, Plaintiff fails to establish an injury that may be redressed by the statute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Accordingly, Plaintiff lacks standing to bring an FMLA claim for any injuries not resulting in lost salary, benefits, or other tangible benefits.

Finally, Plaintiff's FMLA claim based on Defendant's failure to provide Plaintiff training to remain qualified for her job following her return from Family Medical Leave pursuant to 29 C.F.R. § 825.215 is without merit.[3] Plaintiff fails to provide summary judgment evidence establishing that had she been provided the computer training she requested she would have been retained as Lead RTV. The evidence before the Court indicates that her co-Lead RTV, who received the desired computer training, was similarly demoted to RTV Clerk upon the company restructuring and also received a pay cut for the demotion. (Pl.'s App. at 163.) Therefore, Plaintiff fails to establish any causation

---

2. The Court also notes that it sees no inherent contradiction between Defendant's policy to make "every effort" to reinstate an individual whose Family Medical Leave has expired and its policy to terminate such individual's employment, where Defendant provides the opportunity to the individual to reapply upon receiving medical release to work.

3. Plaintiff's pleadings mistakenly cite to 29 C.F.R. § 825.2515. (2d Am. Compl. at 7.) No such regulation exists.

between her demotion and the alleged lack of computer training.[4]

More fatal, however, is the direct text of the regulation: "[i]f an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work." 29 C.F.R. § 825.215(b). Plaintiff does provide summary judgment evidence that a computer training course, available in her absence, was necessary to her maintaining her position as RTV Lead. Plaintiff's own pleadings indicate that she was qualified for the position without computer training. (Pl.'s Resp. at 2.) Plaintiff's absence, therefore, did not render her "unqualified" for the position, since she was qualified to hold the position without the desired computer training. (See Pl.'s App. at 112, 155.) That she may have become "less qualified" relative to another employee due to her absence, though unsupported by the evidence before the Court, does not create a cause of action under 29 C.F.R. § 825.215(b). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's FMLA claims is **GRANTED**.

## C. Retaliation

Plaintiff alleges two types of retaliation: discriminatory retaliation in violation of Title VII, and retaliation in violation of the Texas Worker's Compensation Act. Each retaliation claim will be discussed in turn.

### 1. Title VII Retaliation

Plaintiff's Title VII retaliation claim is predicated upon the theory that Plaintiff's employment was terminated because she filed a complaint with the Texas Commission on Human Rights (TCHR) in violation of 42 U.S.C. § 2000e–3(a). (2d Am. Compl. at 7.) To establish a Title VII retaliation claim under § 2000e–3(a), a plaintiff must establish that she engaged in a protected activity which is causally related to her suffering an "adverse employment action." See Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531 (5th Cir.2003), cert. denied, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34. The adverse employment action complained of in the instant case was Plaintiff's termination in June 2003. The alleged protected activity was the filing of a complaint with the TCHR on May 6, 2003.

To prevail on Plaintiff's retaliation claim, she must prove that she would not have been terminated but for the filing of her TCHR complaint. See Scrivner v. Socorro Indep. Sch. Dist., 169 F.3d 969, 972 (5th Cir.1999). Although a plaintiff is not required to establish that the protected activity was the sole cause of the adverse employment action, she must nevertheless establish a causal link. Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir.2001). Plaintiff argues that the close proximity in time (six weeks) between the protected activity and the adverse employment action establishes an inference of causation. See id. (noting that a four month separation between the protected activity and adverse employment action has been found to establish causation for summary judgment purposes).

Although timing may be sufficient to establish a prima facie case in some circumstances, it is not always. See Raggs v. Miss. Pwr. & Light Co., 278 F.3d

4. Plaintiff acknowledges that she was trained on the computer, but that it was "inade-quate." (Pl.'s App. at 16; Pl.'s Resp. at 5.)

463, 471–72 (5th Cir.2002). In the instant case, Plaintiff provides no additional summary judgment evidence establishing a causal link between the filing of the TCHR complaint and her termination. Plaintiff has directed the Court to no evidence indicating that the decisionmakers responsible for Plaintiff's termination were even aware of the complaint. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal citations omitted). Since "[t]he ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination," *Roberson v. Alltel Info. Services*, 373 F.3d 647, 656 (5th Cir.2004), the Court concludes that based upon the evidence to which the Court has been directed, Plaintiff has failed to establish a *prima facie* case of Title VII retaliation.[5] *See Raggs*, 278 F.3d at 471–72; *see*

---

5. Even if Plaintiff's evidence were sufficient to establish a *prima facie* case of retaliation, Plaintiff fails to establish that Defendant's legitimate business reason-that it terminated Plaintiff's employment because Plaintiff failed to return to work after expiration of her Family Medical Leave-was pretext. *See Roberson*, 373 F.3d at 656.

Plaintiff provides evidence of two stray remarks related to race: one by a managers of the RTV Department, Lori Wolf ("Wolf"), approximately 12–15 months prior to Plaintiff's termination (2d Am. Compl. at 3.); and one by Plaintiff's supervisor, Cynthia Torres ("Torres"), during Plaintiff's initial training slightly fewer than four years prior to Plaintiff's termination. (Def.'s App. at 78.) Plaintiff does not establish that either of these individuals made the decision to terminate Plaintiff in June 2003. Indeed, although Wolf, the RTV Department Manager, "had the ability to make decisions regarding the . . . firing . . . of the employee's [sic] in that department," she was not the RTV Department Manager after approximately March 2003. (Pl.'s Resp. at 6–7.) Furthermore, the decision to terminate an employee for failure to return to work after a leave of absence is one held by the human resources department. (Def.'s App. at 112.) Plaintiff provides no evidence that the human resources department made any remarks regarding Plaintiff's race or were influenced by them.

Even if Wolf and Torres were responsible for Plaintiff's termination and the remarks were true, they would fail to create an inference that Defendant's legitimate business reason was pretext for discriminatory retaliation. The stray remarks were unrelated to the employment decision and were not proximate in time to the termination and therefore do not establish pretext under *Brown v. CSC Logic*,

*Inc.*, 82 F.3d 651, 655 (5th Cir.1996). *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir.2001); *Winter v. Bank of Am.*, No. Civ. A. 3:02–CV–1591–L, 2003 WL 23200278, at *8 (N.D.Tex. Dec. 12, 2003).

Plaintiff's evidence that Defendant did not hire anyone to fill Plaintiff's position despite her termination letter stating such to be the case similarly fails to establish that Defendant's reason was pretext for discriminatory retaliation. At most Plaintiff's evidence establishes that no RTV Lead was hired until approximately one year after Plaintiff was terminated. (Pl.'s App. at 20–21.) It does not, however, establish that Plaintiff was actually replaced, since at the time of Plaintiff's termination, she was employed as an RTV Clerk. (2d Am. Compl. at 5.) Even if such were the case, the falsity of the letter, combined with Plaintiff's *prima facie* evidence of retaliation is woefully insufficient to establish pretext of discriminatory retaliation.

Finally, Plaintiff's evidence that in one instance an exception was made to Defendant's policy of terminating employees when such employees fail to return to work after the conclusion of an approved leave does not establish pretext in the instant case, since the two employees were not similarly situated. (*See* Pl.'s App. at 123.) Plaintiff was on "undetermined" medical leave at the time of her termination, while the other employee was expected to return to work shortly after the conclusion of her Family Medical Leave. (*Id.* at 4C, 164.)

The Court finds Plaintiff's other arguments attempting to establish pretext wholly unpersuasive or immaterial. *See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research*, 155 F.3d 775 (6th Cir.1988) (improper calculation of FMLA time is immaterial to claim of im-

*also Roberson,* 373 F.3d at 656. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim must be **GRANTED**.

### 2. Worker's Compensation Act Retaliation

 Plaintiff's Texas Worker's Compensation Act retaliation claim under Texas Labor Code § 451.001 fails for reasons similar to those discussed above regarding Plaintiff's Title VII retaliation claim. Plaintiff must prove that her filing of a worker's compensation claim was a "determining factor" in her termination. *Porter v. Mesquite Indep. Sch. Dist.,* No. 3:96–CV–3311–BF, 1998 WL 641814, at *6 (N.D.Tex. Sept. 15, 1998). Plaintiff offers no direct evidence of this causation and therefore must rely on circumstantial evidence, which can include: (1) knowledge of the complaint by the decisionmakers responsible for terminating Plaintiff; (2) expression of a negative attitude toward the employee's physical condition; (3) the employer's failure to adhere to established policies; (4) discriminatory treatment relative to similarly situated employees; or (5) evidence establishing that the stated reason for the discharge is false. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 451 (Tex.1996).

 Plaintiff offers evidence that (1) the decisionmakers knew of the worker's compensation claim (Def.'s Mot. at 8); and (2) the corrective action given to Plaintiff after she reported her injury constituted a "negative attitude" (Pl.'s Br. at 12; Pl.'s App. at 115); and (3) Defendant contested Plaintiff's worker's compensation claim.[6] Plaintiff's third argument has no merit under Texas law. *See Continental Coffee Prods.,* 937 S.W.2d at 451–52 ("Under the Texas Workers' Compensation Act, an employer is authorized ... to contest the cause of alleged on-the-job injuries and the compensability of certain injuries."). Plaintiff's evidence to her second argument, though probative to the issue, is insufficient to establish a "negative attitude" toward Plaintiff's physical condition. (Pl.'s App. at 115.) Defendant's knowledge of the claim is, in and of itself, insufficient to establish a *prima facie* case of retaliation. *Vallance v. Irving C.A.R.E.S., Inc.,* 14 S.W.3d 833, 837–39 (Tex.App.—Dallas 2000, no pet.); *Urquidi v. Phelps Dodge Ref. Corp.,* 973 S.W.2d 400, 404 (Tex.App.—El Paso 1998, no pet.). That knowledge, even when coupled with the corrective action issued by Gamestop admonishing Roberson after her injury for her alleged negligence, does not establish that the filing of a worker's compensation claim was a "determining factor" in Plaintiff's termination and therefore is insufficient to establish a *prima facie* case of retaliation.[7] *See Continental Coffee*

---

proper termination where employee is unable to return to work during the period provided for by the FMLA when correctly calculated).

Therefore, Plaintiff fails to create a "genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic.' " *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004).

**6.** Plaintiff's other arguments have been discussed and dismissed previously in this Memorandum Opinion and Order or have otherwise been considered and dismissed as meritless.

**7.** Even if such evidence were sufficient to establish a *prima facie* case of retaliation under Texas Labor Code § 451.001, it is insufficient to overcome Defendant's legitimate business reason. *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 740 (Tex.2003). To overcome Defendant's legitimate business reason-that it terminated Plaintiff for failing

*Prods.*, 937 S.W.2d at 451. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's worker's compensation retaliation claims is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. The Court **DENIES** as **MOOT** Plaintiff's Motion for Oral Argument. The Court also **DENIES** as **MOOT** Defendant's Motion to Strike Evidence. All other claims raised by Plaintiff's Complaint are hereby **DISMISSED** for failure to establish any genuine issue of material fact.

Judgment will be entered accordingly.

SO ORDERED.

### *MEMORANDUM OPINION AND ORDER ON MOTION TO ALTER OR AMEND*

Before the Court is Plaintiff's Motion to Alter or Amend the Judgment, filed February 2, 2005. Plaintiff seeks reconsideration of a part of the Court's Memorandum Opinion and Order, entered January 20, 2004 ("Order"), granting Defendant's Motion for Summary Judgment as to all of Plaintiff's claims. Specifically, Plaintiff seeks to have the Court reconsider its Order as it pertains to two of Plaintiff's claims: Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a) (West 2005) ("Title VII"), and 42 U.S.C. § 1981 (West 2005). Plaintiff claims that Defendant demoted her as a result of racial discrimination.[1] (Pl.'s Mot. at 1–2.) Plaintiff asks the

Court to explicitly rule on her demotion claims.

## I. BACKGROUND

Because the Court already discussed the pertinent facts to the case in its Order, it shall not reiterate them here. Of particular importance to the instant motion, however, is that the Plaintiff alleges that she was demoted from a position of Return–to–Vender ("RTV") Department Lead to an RTV Clerk upon her return from Family Medical Leave in December 2002. She alleges that initially upon her return that she was informally demoted, performing clerk duties and was considered a clerk by Stephanie McKee ("McKee") and that rumors existed in the Distribution Center that she had been demoted. (Pl.'s App. at 32, 55–56.) Plaintiff alleges that McKee, a white coworker who was Plaintiff's co-Lead RTV prior to Plaintiff's use of her Family Medical Leave, replaced her as the RTV Lead upon her return. (Pl.'s 2d Am. Compl. at 3; Pl.'s Br. at 5.) Plaintiff alleges that McKee was a less qualified employee because she received a "job knowledge rating" one point lower than Plaintiff. (Pl.'s App. at 85, 160, 168–70.) Plaintiff does not allege that she received any reduction in pay or that the demotion affected her official title. Rather, she alleges that she was demoted by being required to perform the duties of a clerk, rather than those of a lead. (Pl.'s Resp. at 9.)

Plaintiff also alleges that approximately one month later, the RTV Lead position was eliminated by Defendant. (Pl.'s App. at 43–46, 60–61, 74–77.) Plaintiff alleges

---

to report to work after her Family Medical Leave had expired-Plaintiff must demonstrate a retaliatory motive. *See Munoz v. H & M Wholesale, Inc.*, 926 F.Supp. 596, 610 (S.D.Tex.1996) (citing *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313–14 (Tex. 1994)). Defendant's neutral application of its absence control policy is therefore fatal to

Plaintiff's claim, since Plaintiff has created no genuine issue of material fact as to Defendant's retaliatory motive. *See Parham v. Carrier Corp.*, 9 F.3d 383, 389 (5th Cir.1993).

**1.** Plaintiff does not seek reconsideration of any other part of the Court's Order.

that at this time she was formally demoted, in title and pay, to the position of an RTV Clerk. (Pl.'s App. at 109.) Plaintiff alleges that the demotion was discriminatory and that McKee, who was also demoted, received a pay adjustment which Plaintiff did not receive. (Pl.'s App. at 31–31A, 46–47, 109–10, 154, 163.)

## II. STANDARD

 Plaintiff's Motion was filed within ten days of service of the Order and therefore is analyzed under Federal Rule of Civil Procedure 59(e). *Shepherd v. Int'l Paper Co.,* 372 F.3d 326, 328 n. 1 (5th Cir.2004). Rule 59(e) is "properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." *In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir.2002) (internal quotation omitted). Plaintiff argues a manifest error of law insofar as she believes the Court misunderstood Plaintiff's claims. *See Robertson v. Plano City of Tex.,* 70 F.3d 21, 23 (5th Cir.1995). The Court **GRANTS** Plaintiff's Motion to Reconsider solely to provide an explicit ruling on Plaintiff's Title VII and § 1981 claims as they pertain to Plaintiff's demotion claims.[2] The Court reviews Plaintiff's demotion claims below.

## III. ANALYSIS

Plaintiff's Title VII and § 1981 claims are both analyzed under the same evidentiary standard and establish the same burden-shifting approach. *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000); *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 403 n. 2 (5th Cir.1999). "Because the same facts underlie [both] causes of action, [the Court may] conjunctively analyze [Plaintiff's] Title VII[and] § 1981 ... claims." *Roberson v. Alltel Info. Ser-*

*vices,* 373 F.3d 647, 651 (5th Cir.2004) (also noting that ADEA claims are treated the same as Title VII and § 1981 cases).

 In Title VII and § 1981 cases, "the order and allocation of proof in a private, non-class action challenging employment discrimination" consists of alternating burdens between the plaintiff and the defendant. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir.2001), *cert. denied,* 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002). First, a plaintiff must present a *prima facie* case of discrimination; if the plaintiff presents a *prima facie* case of discrimination, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action; upon such a showing, the presumption of discrimination created by plaintiff's *prima facie* case drops out, and plaintiff must present evidence that either the defendant's reason is pretext for discrimination or that the adverse employment action was motivated in part by a discriminatory animus. *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### A. Formal Demotion

 The Court begins with Plaintiff's formal demotion on January 11, 2002. Both Plaintiff and McKee were formally demoted to Clerk status at this time. (Pl.'s App. at 109, 100, 163.) Assuming *arguendo* that Plaintiff has met her *prima facie* burden, Defendant's decision to eliminate the RTV Lead position is a presump-

---

**2.** The Court reviews the submissions pertaining to Defendant's Motion for Summary Judgment, filed November 15, 2004, including Plaintiff's Response, filed December 6, 2004, and Defendant's Reply, filed December 16, 2004.

tively legitimate reason for terminating or demoting Plaintiff. *See E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995).[3] Accordingly, any presumption of discrimination established by Plaintiff's *prima facie* case drops out and Plaintiff must present evidence of pretext or that discrimination was a motivation in the demotion. *See Rachid*, 376 F.3d at 312.

Plaintiff has proffered no summary judgment evidence which creates a genuine issue of material fact as to the falsity of Defendant's proffered reason for the elimination of the Lead RTV position. Accordingly, Plaintiff cannot establish that Defendant's reason is pretext. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both*

---

**3.** Although it is uncertain whether a "reduction-in-force" analysis is proper in the case of Title VII or § 1981 discrimination claims, the Court, in an abundance of caution, also applies the reduction-in-force analysis to Plaintiff's claims. A reduction-in-force is arguably applicable to cases where an employee's position or positions has been eliminated by an employer and as a result, an employee suffers an adverse employment action. A discriminatory reduction-in-force case can be established one of two ways.

In the first alternative, Plaintiff can establish a *prima facie* case of discrimination if she demonstrates that she was demoted while another, less qualified white employee (McKee) retained her position. *See Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (ADEA). Plaintiff acknowledges that the formal demotion in January 2003, involved both Plaintiff and McKee. (Pl.'s Resp. at 11–12.) Plaintiff therefore argues, albeit inartfully, that McKee "retained" her position despite the demotion because McKee immediately received a pay adjustment to reflect her computer knowledge. (*See* Pl.'s Br. at 5–6.) Plaintiff acknowledges that she did not possess the computer knowledge that McKee did. (*Id.* at 5.) Plaintiff argues instead that McKee was less qualified than Plaintiff because she received a "job knowledge rating" score of one point lower than Plaintiff. (Pl.'s Br. at 5.) This, however, does not reflect the acknowledged disparity in computer training which formed the basis for the pay adjustment. Therefore, Plaintiff has presented no summary judgment evidence that McKee was less qualified to receive the pay adjustment or that Plaintiff had "nearly identical" qualifications as McKee. Accordingly, Plaintiff has failed to meet her burden under the first alternative.

The second alternative establishes a *prima facie* case of discrimination if Plaintiff establishes that she was demoted when she was otherwise qualified to assume another similar and available position, but was not considered for the position because of discrimination. *See Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir.1991) (ADEA). Plaintiff's evidence acknowledges that she had multiple conversations about assuming other positions. (Pl.'s Resp. at 8–9; Pl.'s App. at 159–60.) Plaintiff's evidence also acknowledges that she was considered for other Lead positions, but that none were available at the time of her demotion. (Pl.'s App. at 135–36, 160.) Plaintiff does provide evidence that she was denied another position because she was unable to work shifts of varying hours. (*Id.* at 160.) Plaintiff acknowledges that the position demanded such varying hours. (*Id.;* Pl.'s Resp. at 9.) *See Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir.2001) (denial by employer of employee's preferred shift, even if well justified, does not constitute an adverse employment action).

Plaintiff also acknowledges that Defendant sought to accommodate Plaintiff's disability in considering her for other positions. (Def.'s App. at 81.) Plaintiff's evidence does not establish that she was denied consideration for any other similar position or that she was qualified for any available position for which she was considered. Indeed, Plaintiff's own evidence indicates that she desired to remain in the RTV Department rather than shift departments where Lead positions did exist and might become available at some future date. (Pl.'s App. at 159; Def.'s App. at 42–43.) Accordingly, Plaintiff cannot overcome Defendant's Motion for Summary Judgment as to her reduction-in-force claims even if Plaintiff argued such claims and such claims were applicable to Title VII or § 1981 claims.

that the reason was false, *and* that discrimination was the real reason.") (cited with approval in *Reeves,* 530 U.S. at 143, 148, 154, 120 S.Ct. 2097).

To survive Defendant's Motion for Summary Judgment, therefore, Plaintiff must establish that Defendant had, in its decision to demote Plaintiff, a racially discriminatory animus. Plaintiff, however, fails to establish a genuine issue of material fact as to whether a racially discriminatory animus was a motivating factor of the decision to eliminate the Lead RTV position and demote Plaintiff. Indeed, Plaintiff points to evidence indicating equal, rather than discriminatory treatment: "Smith gave [Simmons and Wolf] his approval at this time because he felt that by demoting both Roberson and McKee 'there was less of a perception that we would be treating Ms. Roberson different.'" (Pl.'s Resp. at 12, quoting Pl.'s App. at 79.) This statement, even viewed in the light most favorable to Plaintiff, does not raise an genuine issue of material fact as to either the falsity of Defendant's proffered reason or whether Defendant's actions were racially motivated. *Wyvill v. United Companies Life Ins. Co.,* 212 F.3d 296, (5th Cir.2000) ("A mere scintilla of evidence is insufficient to present a question for the jury.") (internal quotation omitted). Plaintiff has pointed the Court to no other summary judgment evidence which establishes that discrimination was a motivating factor in the decision to eliminate the Lead RTV position. Based upon the evidence before the Court, no rational jury can conclude that the decision to eliminate the Lead RTV position

was based, even in part, upon a racial animus. *See Crawford v. Formosa Plastics Corp., La.,* 234 F.3d 899, 902–03 (5th Cir.2000).

**B. Informal Demotion**

 Plaintiff also claims that she was unlawfully demoted prior to the elimination of the Lead RTV position. Plaintiff's evidence acknowledges that this demotion was not in title or pay, but only in duties. (Pl.'s Resp. at 9–12.) A demotion in duties, even if not accompanied by a change in title or pay reduction, may constitute an adverse employment action. *See Pegram v. Honeywell, Inc.,* 361 F.3d 272, 283 (5th Cir.2004).

 However, Plaintiff has not established a *prima facie* case of racial discrimination for this alleged demotion in duties.[4] It is undisputed that Plaintiff is a member of a protected class and that Plaintiff was qualified for the position held at the time of the demotion. Defendant disputes whether Plaintiff was actually demoted. Plaintiff's evidence includes the subjective belief of McKee that Plaintiff was demoted and Plaintiff's general testimony that rumors were circulating in the Distribution Center that she had been demoted during her absence. (Pl.'s App. at 55–56.) This evidence, standing alone, is insufficient to establish a *prima facie* case of discriminatory demotion. *See Breaux v. City of Garland,* 205 F.3d 150, 160 (5th Cir.2000) ("[A] plaintiff's subjective perception that a demotion has occurred is not enough to constitute an adverse employment action.") (internal quotations omitted); *Roberson v.*

---

4. To overcome summary judgment, Plaintiff is first required to establish a *prima facie* case of discrimination by showing that she was (1) a member of a protected class; (2) qualified for the position held at the time of demotion; (3) actually demoted or subject to adverse employment action; and (4) either (a) replaced by someone outside the protected class, *i.e.,* a

white employee (McKee), (b) otherwise demoted as a result of plaintiff's race, or (c) treated less favorably than similarly situated white employees. *See Smith v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir.2003) (ADEA); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 223–24 (5th Cir.2000) (ADEA).

*Alltel Info. Services,* 373 F.3d 647, 654 (5th Cir.2004) ("appellant's subjective belief that [he] was not selected for the ... position based upon race or age is ... insufficient to create an inference of the defendants' discriminatory intent."); *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 96 (5th Cir.1991) ("It should not matter that the [subjective] belief belongs to a party other than the plaintiff").

Plaintiff also presents evidence that the RTV supervisor, Cynthia Torres, considered her a clerk prior to the formal demotion. (Pl.'s App. at 19.) Although this statement of Torres does establish that she may have performed clerk duties at this time, Plaintiff fails to establish an adverse employment action since she has failed to provide summary judgment evidence how her duties "as a Clerk" differed from her duties as a Lead. *See Pegram,* 361 F.3d at 283. The Court will not assume or sift through the record to find that the nonmoving party could or would prove the necessary facts. *See Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir.1998); *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003). Accordingly, Plaintiff fails to present a *prima facie* case of discrimination as to her informal demotion claims.

The Court **GRANTS** Plaintiffs Motion to Reconsider its Order insofar as it makes explicit its ruling on Plaintiff's claims of racially discrimination demotion arising under § 1981 and Title VII. Upon reconsideration and for the foregoing reasons, Defendant's Motion for Summary Judgment as to these claims is **GRANTED**. The Judgment entered January 20, 2005, will not be disturbed.

SO ORDERED.